IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MATTHEW PERALES,**

    **Plaintiff,**

v.

**BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF BERNALILLO,
RALPH FERNANDEZ, in his individual
capacity acting under color of state law,
LEAH JEFFRIES-JACKSON, in her individual
capacity acting under color of state law,
and GERMAN DELGADO-MARQUEZ, in his
individual capacity acting under color of state law.**

    **Defendants.**

Case No. _____

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

Plaintiff Matthew Perales, by and through his counsel of record, Dodd Law Office, LLC (Christopher A. Dodd and Brooke Jordy) and The Ward Law Firm (Vincent J. Ward), hereby brings this complaint for civil rights violations arising from an inmate attack at the Metropolitan Detention Center ("MDC"). As grounds for this pleading, Plaintiff states as follows:

### JURISDICTION, VENUE, & PARTIES

1. Jurisdiction and venue are proper pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367.

2. At all times material to this lawsuit, Defendants Ralph Fernandez, Leah Jeffries-Jackson, and German Delgado-Marquez (Individual Defendants) acted within the course and scope of their duties as public employees, were state actors, and acted under color of state law.

3. All acts complained of occurred in Bernalillo County, New Mexico.

4. Plaintiff Matthew Perales is a resident of Bernalillo County, New Mexico.

1

5. MDC is Bernalillo County's jail, wherein it houses pretrial detainees. It is an agency of Bernalillo County and is located therein.

6. At the time of the conduct at issue in this Complaint, Defendant Ralph Fernandez was the Chief of MDC.

7. At the time of the conduct at issue in this Complaint, Defendant Leah Jeffries-Jackson was a Lieutenant and/or Captain at MDC. Defendant Jeffries-Jackson oversaw and managed the implementation of the tablet program at MDC.

8. At the time of the conduct at issue in this Complaint, Defendant German Delgado-Marquez was a guard at MDC.

9. At the time of the conduct at issue in this Complaint, Defendant Bernalillo County Board of County Commissioners (BCBCC), an independent public body in the State of New Mexico, controlled MDC.

**FACTUAL BACKGROUND**

10. Mr. Perales was incarcerated at MDC in April 2020.

11. During his incarceration at MDC, Mr. Perales was within the custodial care of MDC, Bernalillo County, Defendant BCBCC, and the Individual Defendants. Therefore, a special relationship existed between the Parties.

12. On April 28, 2020, Mr. Perales was housed in Unit E, Pod 5 at MDC.

13. Bernalillo County and Defendant BCBCC are responsible for ensuring inmate safety, wellbeing, and security at MDC.

14. MDC provides means for inmates to communicate with family, friends, and loved ones.

15. Historically, this communication had been achieved using phones located in the common areas of each pod within MDC.

16. However, at some time prior to April 28, 2020, Chief Ralph Fernandez, MDC personnel, Bernalillo County, and/or BCBCC executed a contract with a private contractor to place tablet computers within MDC pods.

17. These tablet computers allow inmates to watch movies, listen to music, play games, conduct video-chats with family and friends, and send correspondence to loved ones.

18. Inmates are charged substantial fees for their use of the tablets.

19. The tablet computers also provide the portal through which inmates can submit grievances, sick calls, and other administrative requests.

20. Upon the emergence of the COVID-19 pandemic, Defendants greatly restricted inmates' access to the phones located in the common areas of the pods, in order to minimize the amount of time inmates spent around one another.

21. During April 2020, inmates were frequently on lockdown in their cells and were only allowed out of their cells for approximately fifteen minutes per day.

22. Due to this limited access to the telephones in the common areas of the pods, the tablet computers became the inmates' principal means of communication with the outside world, obtaining administrative relief, and entertainment while being locked in their cells for the vast majority of each day.

23. Defendants placed only a few tablet computers in Unit E, Pod 5 at MDC.

24. On April 28, 2020, there were 39 inmates housed in Unit E, Pod 5.

25. Thus, there was only approximately one tablet for every 10 inmates in Unit E, Pod 5.

26. Upon information and belief, BCBCC and its private contractor derive substantial profits from MDC inmates' use of the tablet computers.

27. Upon information and belief, Defendants provided so few tablet computers for each pod in order to maximize the profits generated by each tablet computer.

28. Prior to April 28, 2020, inmates repeatedly complained that they had inadequate access to the tablet computers.

29. Defendants knew or should have known that providing so few tablet computers created a substantial likelihood of violence between inmates. In other words, the policy of providing few tablets for several inmates created a dangerous condition for the inmates housed at MDC.

30. Prior to the incident at issue in this Complaint, Defendants had notice that the tablet policy created a dangerous condition for inmates. For example:

   a. In October 2019, monitors appointed in the *McClendon* case noted that "Counsel have continued to receive reports regarding residents having trouble accessing tablets[,] . . . and Counsel shared concerns that the more vulnerable residents were experiencing difficulties accessing services due to the tablets being monopolized by other residents."

   b. Similarly, in September 2019, monitors noted that "Counsel have been receiving reports regarding "residents having trouble accessing the tablets in order to request services, file grievances, or obtain information. Residents report that the individuals who have money keep the tablets for extended periods of time, even bringing them into their cells, making them inaccessible for other residents. Residents on F-4 also reported that when the individuals in control of the tablets place them back on the

    docking stations, to charge them, they place notes on them directing other residents not to use the tablets. F-4 residents said they complied for fear of harm by the individuals placing the notes. Residents have reported that staff do not address these issues and allow certain residents to monopolize the tablets. Counsel are concerned with these reports and the potential impact, especially on more vulnerable subclass members. Please ensure that tablets are accessible to all residents."

c. As a follow up to the September 2019 report, in December 2019, monitors wrote, "During subsequent visits *staff* have reported that there is no policy or procedure regarding the tablets. Most said that they generally have the tablets put back on the chargers at the end of their shifts, but do not otherwise regulate who has them or for how long. I observed a tablet with someone's name placed on it during our October 7 visit. The more vulnerable residents continue to report difficulty accessing the tablets. Staff also reported that they were given no training on the tablets, so when residents ask for help they are unable to assist. The MEAC minutes indicate no issues were identified by administration. At the October 18 meeting Plaintiffs counsel noted that residents are afraid to report these concerns for fear of retaliation from the residents hoarding the tablets. We discussed possible solutions and Chief Fernandez asked that we put something in writing. On October 29 Alexandra Freedman Smith sent the requested letter." (emphasis added).

d. Additionally, in a letter sent on behalf of Plaintiffs-Intervenors in October 2019, Counsel explained, "we are receiving many complaints from inmates stating that they are unable to utilize tablets because some inmates take the tablets and will not share them with the other inmates. The inmates who are unable to utilize the tablets

are unwilling to report the inmates who hoard the tablets because they reasonably fear retaliation by these inmates."

    e. In December 2019, a disciplinary report documented a fight between two inmates "over a tablet."

31. On or about April 28, 2020, Mr. Perales was attacked by another inmate at MDC, due to a dispute regarding the use of the tablet computers.

32. The assailant punched Mr. Perales in the head, and Mr. Perales fell unconscious onto the concrete floor of the recreation yard of Unit E, Pod 5.

33. Prior to the attack, Defendants were made aware that the assailant and Mr. Perales had had a disagreement regarding the use of a tablet computer.

34. Four days before the attack, Defendant Delgado-Marquez wrote an email to Defendant Jefferies-Jackson and another MDC administrator informing them that the inmate, who subsequently attacked Mr. Perales, was hoarding the tablets and starting issues with the other inmates regarding the tablets.

35. The inmate was moved out of Mr. Perales' cell because Mr. Perales complained to a correctional officer about disputes the two were having relating to the tablet computers.

36. Defendants failed to take precautions to prevent Mr. Perales from being attacked.

37. As a result of the attack, Mr. Perales suffered severe brain and head injuries, the treatment of which required multiple brain surgeries and an extended hospital stay at the University of New Mexico Hospital neurological intensive care unit.

38. As a member of his treatment team at UNMH wrote in a letter to MDC approximately two and half weeks after the attack: "His injuries were severe, primarily to the skull and brain. He required multiple surgeries, including removal of part of his skull. He had an

extended stay in the Intensive Care Unit. At this point, we are working with Speech Therapy to see if he can eat. Physical and Occupational Therapy will help us decide if he can feed himself. Physically, he cannot yet sit up without assistance. He needs to wear a helmet if out of bed. His prognosis is not yet known. Patients with these types of injuries often require 1-2 years of therapy before returning to fully caring for themselves. He will have weekly clinic visits after being in the hospital, then monthly visits for more than a year. His progress will be tracked at these clinic visits. It is very likely that this represents a life changing event for the patient and some loss of function will be permanent."

39. Mr. Perales suffered severe damages as a result of this incident.

## CLAIMS FOR RELIEF

### COUNT I:
### CIVIL RIGHTS CLAIMS AGAINST DEFENDANTS RALPH FERNANDEZ, LEAH JACKSON-JEFFRIES, AND GERMAN DELGADO-MARQUEZ
### (DANGER CREATION AND SPECIAL RELATIONSHIP)

40. Plaintiff incorporates the preceding paragraphs as though they were fully stated herein.

41. Defendants Ralph Fernandez, Leah Jeffries-Jackson, and German Delgado-Marquez are public employees of BCBCC and acted under color of state law at all times material to this complaint.

42. The Individual Defendants owed a duty of reasonable care in exercising their authority to keep inmates at MDC safe from harm.

43. The Individual Defendants had responsibility for Mr. Perales' wellbeing, safety, and security during his incarceration, which created a special relationship between them and Mr. Perales. That obligation required them to provide adequate supervision of inmates and contractors in the operation of MDC.

44. By placing only a few tablet computers in a pod of nearly forty inmates, the Individual Defendants created a dangerous condition, and it was foreseeable that individuals such as Mr. Perales would suffer damages as a result.

45. Furthermore, by failing to establish adequate security measures to prevent inmate-on-inmate violence, the Individual Defendants breached their duties by failing to operate a jail facility in a reasonably safe manner, and it was foreseeable that individuals such as Mr. Perales would suffer damages as a result.

46. The conduct of the Individual Defendants is the kind that makes jail facilities dangerous, or potentially so, to all inmates, including Mr. Perales.

47. The breaches of their duties by the Individual Defendants were a proximate cause of Mr. Perales' injuries.

48. Mr. Perales suffered damages as a result of the deprivation of his constitutional rights by the Individual Defendants.

**COUNT II:**
**CIVIL RIGHTS CLAIMS AGAINST DEFENDANT BERNALILLO COUNTY BOARD OF COUNTY COMMISSIONERS**
**(DANGER CREATION AND SPECIAL RELATIONSHIP)**

49. Plaintiff incorporates the preceding paragraphs as though they were fully stated herein.

50. Defendant BCBCC is required to establish and maintain standard operating procedures, training, monitoring, discipline and supervision intended to prevent violations of inmates' civil rights, rather than to encourage such violations.

51. Before Mr. Perales was attacked and sustained serious bodily injuries, Defendant BCBCC knew that MDC's tablet program created a dangerous condition for inmates at MDC.

52. Before Mr. Perales was attacked and sustained serious bodily injuries, BCBCC knew of the risks associated with disregarding inmates' constitutional rights but chose not to take appropriate action to protect inmates.

53. Defendant BCBCC's deliberate indifference and failure to implement policies and procedures to make the tablet program safe for inmates caused the deprivation of Mr. Perales' constitutional rights.

54. Defendant BCBCC acted intentionally, maliciously, or with reckless indifference, thus punitive damages should be awarded to prevent this type of misconduct in the future.

## REQUESTED RELIEF

Based on the foregoing, Plaintiff respectfully requests the Court enter judgment as follows:

1. An award of damages against the Defendants in an amount that a jury determines is sufficient to compensate Plaintiff for his injuries;

2. The reasonable expenses of any necessary medical care and treatment;

3. An award of damages against the Defendants in an amount that a jury determines is sufficient to compensate Plaintiff for his pain and suffering;

4. An award of damages against the Defendants in an amount that a jury determines is sufficient to compensate Plaintiff for the mitigating or aggravating circumstances attending the wrongful act, neglect, or default;

5. An award of damages against the Defendants in an amount that a jury determines is sufficient to compensate Plaintiff for the emotional distress he suffered;

6. An award of punitive damages against Defendants;

7. And any other relief the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial pursuant to Fed. R. Civ. Pro. 38(a).

Respectfully submitted,

*/s/ Vincent J. Ward*

Vincent J. Ward
The Ward Law Firm
P.O. Box 7940
Albuquerque, NM 87194-7940
505.944.9454
vincent@wardlawnm.com

Christopher A. Dodd
Brooke Jordy
DODD LAW OFFICE, LLC
500 Marquette Avenue NW
Suite 1330
Albuquerque, NM 87102
505.475.2742
chris@doddnm.com

*Attorneys for Plaintiff*